## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BABST, CALLAND, CLEMENTS & ZOMNIR, P.C., | : |
| | : CIVIL ACTION NO. _____ |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| JACOB FRYDMAN, | : |
| | : |
| Defendant. | : |

## COMPLAINT

AND NOW COMES, Plaintiff, Babst, Calland, Clements & Zomnir, P.C. ("Babst Calland"), by and through its undersigned counsel, asserts the following causes of action against Defendant Jacob Frydman, and in support thereof, avers the following based upon Babst Calland's most recent knowledge, information, and reasonable belief:

### THE PARTIES

1. Babst Calland is a Pennsylvania professional corporation with its principal place of business located at Two Gateway Center, 603 Stanwix Street, 6th Floor, Pittsburgh, Pennsylvania 15222.

2. Defendant Jacob Frydman is an adult individual who, upon information and belief, resides at 845 United Nations Plaza, Apartment 44D, New York, New York 10017-3534.

3. Mr. Frydman is a former client of Babst Calland.

### JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332, because Babst Calland and Mr. Frydman are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391, because the events giving rise to Babst Calland's claims occurred within this judicial district.

**SUMMARY OF ACTION**

6. Babst Calland is a law firm headquartered in Pittsburgh, Pennsylvania.

7. Starting in November 2022 and continuing through August 2023, Mr. Frydman retained Babst Calland to represent him and/or one of his entities in five separate litigation matters: (1) *Frydman, et al. v. Herrick, Feinstein LLP*, *et al.* Index No. 150679/2023 (N.Y. Sup. Ct.); (2) *Frydman v. Lichtenstein, et al.*, No. 590603/2012 (N.Y. Sup. Ct.); (3) *Frydman, et al. v. SEDA-COGA Joint Rail Authority, et al.*, No. 2022-CV-380 (Columbia Cnty. Ct. Com. Pl.); (4) *In re: Deluxe Building Solutions, LLC*, No. 5:21-BK-00534 (M.D. Pa. Bankr.); and (5) *Pontius, et al. v. Frydman, et al.*, No. 2023-CV-774 (Columbia Cnty. Ct. Com. Pl.).

8. Babst Calland entered into a written engagement agreement with Mr. Frydman for each one of those matters via Mr. Frydman's execution of the written agreements and/or acceptance of those terms through his conduct, true and correct copies of which are attached hereto as "**Exhibit A**," "**Exhibit B**," "**Exhibit C**," "**Exhibit D**," and "**Exhibit E**."

9. Babst Calland proceeded to render legal services to Mr. Frydman and/or his entities in each one of those matters.

10. Babst Calland recorded and billed for legal fees, costs, and expenses for those services, as provided under the engagement agreements.

11. Babst Calland sent Mr. Frydman monthly invoices for the services rendered.

12.     At the time the invoices were issued, Mr. Frydman did not object to the services provided, the fees, costs, or expenses charged, or the amounts stated on the invoices.

13.     Pursuant to the terms of each engagement agreement, Mr. Frydman was required to remit payment to Babst Calland no later than 30 days from the date of receipt of each invoice.

14.     However, Mr. Frydman failed to pay, in full, 19 invoices from Babst Calland (collectively the "Outstanding Invoices"), as shown in the table below:

| Invoice | Date | Total Billed | Amount Paid | Amount Outstanding |
| --- | --- | --- | --- | --- |
| 1534002 | 6/19/23 | $37,475.64 | $27,439.58 | $10,036.06 |
| 1535429 | 7/25/23 | $4,384.50 | $3,081.95 | $1,302.55 |
| 1535430 | 7/25/23 | $6,795.50 | $0.00 | $6,795.50 |
| 1536432 | 8/16/23 | $7,382.00 | $0.00 | $7,382.00 |
| 1536433 | 8/16/23 | $592.50 | $0.00 | $592.50 |
| 1536371 | 8/15/23 | $4,029.00 | $0.00 | $4,029.00 |
| 1537671 | 9/19/23 | $3,466.50 | $0.00 | $3,466.50 |
| 1537721 | 9/20/23 | $118.50 | $0.00 | $118.50 |
| 1537722 | 9/20/23 | $12,549.50 | $0.00 | $12,549.50 |
| 1537723 | 9/20/23 | $2,014.50 | $0.00 | $2,014.50 |
| 1537724 | 9/20/23 | $4,243.50 | $0.00 | $4,243.50 |
| 1539042 | 10/19/23 | $9,759.00 | $0.00 | $9,759.00 |
| 1539043 | 10/19/23 | $3,608.68 | $0.00 | $3,608.68 |
| 1539044 | 10/19/23 | $6,051.87 | $0.00 | $6,051.87 |
| 1540389 | 11/20/23 | $316.00 | $0.00 | $316.00 |
| 1540390 | 11/20/23 | $2,497.50 | $0.00 | $2,497.50 |

| 1540391 | 11/20/23 | $237.00 | $0.00 | $237.00 |
| 1541989 | 1/8/24 | $12.00 | $0.00 | $12.00 |
| 1541990 | 1/8/24 | $331.32 | $0.00 | $331.32 |

True and correct copies of the redacted Outstanding Invoices are attached hereto as "**Exhibit F**."

15. On November 6, 2023, Donald Bluedorn, the Managing Shareholder of Babst Calland, sent Mr. Frydman an email, advising him of his outstanding balance—which, at the time, was $111,949.66—and demanding that Mr. Frydman bring his account current as soon as possible.

16. The next day, on November 7, 2023, Mr. Frydman spoke to Amy Leska, the Manager of Credit & Collections at Babst Calland, and committed to paying the outstanding balance by November 30, 2023.

17. Ms. Leska sent an email to Mr. Frydman later that day to memorialize his representation.

18. On November 30, 2023, Mr. Frydman wired $40,000 to Babst Calland, adding: "I'll get the balance paid in the next 10 to 14 days."

19. On December 4, 2023, Brad Supel, the Chief Financial Officer, sent an email to Mr. Frydman, writing:

> We received your wire transfer on Thursday, November 30, 2023, in the amount of $40,000. However, you told us that you were going to pay the entire outstanding balance by the end of November—and that obviously did not happen. Therefore, and given your poor payment history with the firm, we are exercising our right to suspend performance of services and charge you interest on the outstanding balance at the rate of 1.5% per month (or 18% per annum). If you pay the outstanding balance ($75,000.16), in full, by this Friday, December 8, 2023, we will resume our work on your matters and waive the interest. We simply cannot allow the invoices to go unpaid any longer.

20. Mr. Frydman failed to remit payment for the outstanding balance by December 8, 2023.

21.     On December 15, 2023, Casey Alan Coyle, the billing attorney for Mr. Frydman's matters, sent him an email advising that the firm was left with no choice but to withdraw as counsel given the failure to make timely and promised payments.

22.     Mr. Frydman replied, "I understand.  I to [sic] am sorry."

23.     Mr. Frydman has not remitted any payments to Babst Calland since November 30, 2024, leaving a balance of $75,343,48, exclusive of interest.

24.     Pursuant to each engagement agreement, Babst Calland is permitted to charge Mr. Frydman interest, at the rate of 1.5% per month (or 18% per annum), for any amounts due and owing.

25.     Babst Calland exercised its right to charge Mr. Frydman interest on July 20, 2023.

26.     To date, Mr. Frydman has accrued $22,327.61 in interest due to his failure to pay the Outstanding Invoices.

27.     Therefore, Mr. Frydman owes Babst Calland $97,971.09 as of the filing of the instant Complaint.

28.     Interest is continuing to accrue at the rate of $45.38 per diem.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

29.     Babst Calland incorporates by reference the preceding paragraphs as if fully set forth herein.

30.     Mr. Frydman entered into five separate engagement agreements with Babst Calland, each of which is a valid contract.

31.     Each engagement agreement was supported by adequate consideration.

32. Pursuant to the terms of each engagement agreement, Mr. Frydman was required to remit payment to Babst Calland no later than 30 days from the date of receipt of each monthly invoice.

33. Babst Calland billed Mr. Frydman monthly for the fees, costs, and expenses incurred on his or his entity's behalf.

34. Mr. Frydman did not object to services provided, the invoices, the fees, costs, or expenses charged, or the amounts stated on the invoices.

35. Mr. Frydman nonetheless failed to pay, in full, the Outstanding Invoices, and in doing so, breached the engagement agreements.

36. Babst Caland has suffered financial losses in excess of $75,000, exclusive of interest, as a result of Mr. Frydman's breach.

## COUNT II
## Account Stated

37. Babst Calland incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

38. As set forth above, Mr. Frydman had a running account with Babst Calland, the balance remains due, the account was rendered upon Mr. Frydman, and he assented to the accuracy and correctness of the account.

39. As a direct and proximate cause of Mr. Frydman's wrongful conduct, Babst Caland has suffered financial losses in excess of $75,000, exclusive of interest.

## COUNT III
## Quantum Meruit
## (In the Alternative)

40. Babst Calland incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

41.     In the event that one or more of the engagement agreements are found to be invalid, then Babst Calland asserts a cause of action for quantum meruit against Mr. Frydman.

42.     Babst Calland performed legal services for Mr. Frydman and his entities in good faith and with the expectation that it would be compensated for its services and reimbursed for the costs and expenses associated with its representation.

43.     Babst Calland reasonably expected to be fairly compensated for its services.

44.     Mr. Frydman, on behalf of himself and/or his entities, accepted the benefit of Babst Calland's services.

45.     The reasonable value of the services, including fees, costs, and expenses, that Babst Calland provided and which remain unpaid is $75,343,48.

46.     As a direct and proximate cause of Mr. Frydman's wrongful conduct, Babst Caland has suffered financial losses in excess of $75,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Babst, Calland, Clements & Zomnir, P.C. requests that this Court enter judgment in its favor and against Defendant Jacob Frydman and grant the following relief:

a.  Award damages in excess of $75,000 in an amount to be determined at trial, including an award of prejudgment interest; and

b.  Order such other relief as the Court deems just and proper.

        Respectfully submitted,

        BABST CALLAND, CLEMENTS AND ZOMNIR P.C.

        */s/ Kevin K. Douglass*
        Kevin K. Douglass, Esquire (I.D. No. 47748)
        Two Gateway Center
        603 Stanwix Street, 6th Floor
        Pittsburgh, PA 15222
        Telephone: 412-394-5400
        kdouglass@babstcalland.com
        *Counsel for Plaintiff Babst, Calland, Clements & Zomnir, P.C.*

Dated: May 19, 2025